IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES B. GARNER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CV-10-BE-0935-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Commissioner of the Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

The claimant, James B. Garner, filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 27, 2006. The claimant alleged disability beginning on August 10, 2006 caused by a torn anterior cruciate ligament of the left knee, arthrosis of the patellofemoral joint, high blood pressure, breathing problems, elbow problems, and right knee problems. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge, who held a hearing on April 7, 2009. In a decision dated July 9, 2009, the ALJ found that the claimant was not disabled under the Social Security Act and, therefore, was not eligible for DIB and SSI. On February 24, 2010, the Appeals Council denied the claimant's request for review. The claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Commissioner's decision is AFFIRMED.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: (1) whether the ALJ applied the law erroneously by not considering all aspects of a listing; (2) whether substantial evidence supports the finding that the claimant did not satisfy listing 1.02; and (3) whether the ALJ erred in giving insufficient weight to the claimant's obesity when determining that claimant did not satisfy the listing.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if he applied the correct legal standards and if substantial evidence supports his factual conclusions.  *See* 42 U.S.C. § 405(g) (2006); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*. The court will affirm factual determinations if substantial evidence from the record supports them.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court not only must look to those parts of the record that support the ALJ's decision but also must view the record in its entirety and take account of evidence that detracts from evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question other than step three leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010).

To satisfy listing 1.02, the one Garner claims he met, a claimant must show (1) major dysfunction of a joint characterized by a series of specific conditions and (2) an inability to ambulate effectively. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02 (2010).  A claimant cannot ambulate effectively if his lower extremities are so impaired that he cannot walk independently without hand-held assistive devices. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b (2010). Regarding obesity, the ALJ must consider its effects in conjunction with the claimant's other impairments when applying the listings and when determining  the claimant's ability to return to

work. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00Q (2010); s*ee Shellhouse v. Barnhart*, 395 F. Supp. 2d 1136, 1140 (N.D. Ala. 2005).

## V. FACTS

The claimant was forty-two years old at the time of the administrative hearing and has a high school diploma. (R. 22, 140). In the past, he worked as a delivery driver and auto parts clerk, an automobile inspector, and an automobile mechanic. (R. 20). The period in which he claims disability began on August 10, 2006 and ended on September 30, 2007. (R. 17). The claimant alleges that he was unable to work because of a left anterior cruciate ligament ("ACL") tear, degenerative arthrosis of the patellofemoral joint, and obesity. (R. 17, 77). The ACL is a ligament that stabilizes the knee during load bearing. Degenerative arthrosis is a wearing of the cartilage and bone of the patellofemoral joint, which functions to guide the knee's motion. The claimant has worked at Alcoholism Recovery Services, Inc. in Bessemer, AL since October 1, 2007. (R. 17).

*Garner's Knee Impairment and Obesity*

Since 1984, the claimant has experienced knee and back injuries that have contributed to his claimed disability. (R. 62-65, 223). On August 19, 2004, he first complained of general aching in his muscles and joints to Dr. Pace, a treating internist at UAB Medical West Bessemer Clinic ("UAB West"). (R. 178). Dr. Pace made no notes referring specifically to knee pain during claimant's five visits. (R. 174-77).

The claimant's weight has fluctuated between 350 and 400 pounds over the past five years. Many of his doctors, including Dr. Pace, have documented the claimant's morbid obesity. (R. 174). On August 7, 2006, Dr. Curtis heard the claimant's complaints about grinding,

4

popping, and clicking in his knee. Dr. Curtis reasoned that the claimant's morbid obesity had probably caused the degenerative changes in his knee. The claimant received an injection of Betamethasone and local anesthetic on this visit. (R. 205). Six days later, the claimant visited Dr. Edge, a general surgeon at UAB West, who treated the claimant on at least four other occasions. Dr. Edge noted knee pain but concluded that the claimant had a full range of motion and no effusion. (R. 193).

On September 21, 2006, the claimant began going to Cooper Green Hospital, where he consulted with Dr. Allen. Dr. Allen also noted complaints of knee pain and ordered an MRI and x-ray to investigate further. (R. 215). These tests revealed a complete tear of the anterior cruciate ligament and degenerative arthrosis of the patellofemoral joint. (R. 216-18). Based on those results, the claimant chose to undergo reconstructive surgery of his anterior cruciate ligament. (R. 61). On March 20, 2007, Dr. James Floyd, a surgeon at Cooper Green Hospital, performed this surgery successfully. (R. 268-70). Post-surgery treatment notes from April 4, 2007 reflect a stable recovery, fifty percent ambulation with only mild swelling, and short-term goals to achieve full ambulation. (R. 266). The claimant also did not complain of further knee problems in the months following and testified that the procedure restored good movement in his leg. (R. 64).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for DIB and SSI, the claimant requested a hearing before an ALJ. (R. 25). At the hearing on April 7, 2009, the ALJ first asked the claimant about the time frames surrounding his current and previous work. The claimant stated that he left a previous job at Advanced Stores because of knee pain in July or August 2006. (R. 60). He further testified that he felt generally able to return to work around August or

September 2007 because of his surgery. (R. 59-61).

The ALJ also heard testimony regarding claimant's basic job capabilities. The claimant testified that on a typical day at Alcoholism Recovery Services he sits and stands intermittently and stands for up to two non-consecutive hours. He stated that his knee pain affected his work negatively and that he has to sit while performing tasks like giving lectures. The claimant said that he avoided picking up items weighing more than fifteen pounds because of pain in his lower back. (R. 63-64).

Dr. Julia Russell, a vocational expert, also gave testimony explaining the residual functional capacity ("RFC") required for the claimant's past jobs. (R. 72-73). She determined that his current job was within the sedentary and skilled classification. According to Dr. Russell, the claimant's job as a delivery driver was light and low-skilled, his job as an automobile inspector was light and skilled, and his auto mechanic position was medium and skilled. *Id.*

*The ALJ Decision*

On July 9, 2009, the ALJ issued a decision that the claimant was not disabled under the Social Security Act. (R. 21). The ALJ began by finding that the claimant's insurance under the Act ran until December 31, 2011. The ALJ next found that the claimant had begun substantial gainful activity on October 1, 2007, and he limited his sequential-step analysis to the continuous period from August 10, 2006 to September 30, 2007. (R. 17).

The ALJ found that the claimant had met his burden of proving a severe impairment during the relevant period. *Id.* The status/post left anterior cruciate ligament tear, the degenerative arthrosis of the patellofemoral joint, and the obesity constituted severe impairments. The ALJ relied in part on the reports of Dr. Pace and Dr. Wilson to dismiss as non-severe all

other claimed impairments, such as back pain, hypertension, and prostate problems. (R. 18).

In evaluating whether claimant satisfied a listing, the ALJ ruled that the severe impairments did not meet listing level severity and that no treating, examining, or reviewing physician had shown evidence of impairments that would meet or equal a listing. (R. 18).  The ALJ then examined the claimant's RFC.  Relying principally on the success of Dr. Floyd's surgery and the claimant's own testimony that the surgery had remedied the worst of his knee problems, the ALJ found that the claimant could perform a full range of sedentary work. (R. 19).

The ALJ did find that the claimant was unable to perform past relevant work because Dr. Russell categorized each job as having a requisite RFC in excess of the sedentary level. (R. 20). However, the Medical-Vocational Rules directly supported the ALJ's finding that claimant was not disabled.  The ALJ further found that jobs that the claimant could perform existed in significant numbers in the national economy.  In conclusion, the ALJ ruled that the claimant was not disabled for the relevant period pursuant to the Act. (R. 21).

## VI. DISCUSSION

The claimant takes issue with the ALJ's application of the legal standard for whether his impairments met or equaled a listing.  An ALJ has a duty to consider multiple impairments in combination when determining a claimant's disability. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).  However, an ALJ comports with this duty by simply stating that he considered the impairments in combination. *Id.; see Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (affirming ALJ determination that claimant's severe impairments, in combination, did not meet or equal a listing).  Here, the ALJ found that claimant had three severe impairments.  He considered these impairments alone and in combination when

he noted that "no . . . physician has suggested the existence of any impairment or combination of impairments which would meet . . . the criteria of any listed impairment." (R. 18).  Therefore, the ALJ gave legally sufficient consideration to the question of whether claimant's impairments met or equaled a listing.

The claimant also maintains that the ALJ's failure to consider all aspects of listing 1.02 was a reversible error (Claimant's Br. at 6).  Although an ALJ has a basic duty to develop a full and fair record, the Eleventh Circuit has held consistently that an ALJ fulfills his administrative duties when he uses general language to conclude that impairments fail to satisfy a listing.  *Compare Ellison v. Barnhart*, 353 F.3d 1272, 1276 (11th Cir. 2003) (requiring development of a complete medical history within the twelve months preceding application pursuant to 20 C.F.R. § 416.912(d)), *with Jones*, 941 F.2d at 1533 (upholding ALJ finding that listing was unsatisfied even with only single sentence addressing whether impairments satisfied listing).  The ALJ developed an extensive medical record in this case in accordance with his duty.  Despite the brevity of his conclusion that claimant's impairments did not satisfy a listing, he referred to treating, examining, and reviewing physicians' opinions in reaching that conclusion. (R. 18).  The ALJ, thus, committed no reversible legal error in his listing analysis.

The claimant further contends that substantial evidence does not support denial of a listing qualification.  A claimant bears the burden of proving every element of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  This court will defer to the ALJ's resolution of this issue if substantial evidence supports a finding that the claimant failed to prove a single element of listing 1.02. *See Richardson*, 402 U.S. at 401.

Listing 1.02 requires a claimant to prove (1) major dysfunction of a joint characterized by

a series specific conditions, and (2) an inability to ambulate effectively. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (2010). Claimant draws the conclusion that he is unable to ambulate effectively because the ALJ determined that his RFC was sedentary. A finding of a sedentary RFC is not legally equivalent to an inability to ambulate. *See Zebley*, 493 U.S. at 530 (burden of proof rests on claimant); *see also, e.g., Gonzalez ex rel. Guzman v. Sec'y of Health & Human Servs.*, 360 F. App'x 240, 244 (2d Cir. 2010); *Schettino v. Comm'r of Soc. Sec.*, 295 F. App'x 543, 545-46 (3d Cir. 2008) (both holding that plaintiff failed to prove an inability to ambulate notwithstanding sedentary RFC status). Post-surgery treatment notes from April 4, 2007 reflect a stable recovery, fifty percent ambulation with only mild swelling, and short-term goals to achieve full ambulation. (R. 266). The claimant did not complain of further knee problems in the months following that report and testified that the procedure restored "good movement" in his leg. (R. 64). Upon review of the record as a whole and of the ALJ's analysis, this court finds that substantial evidence supports his conclusion that claimant's impairments did not meet or equal listing 1.02.

      Finally, the claimant argues that the ALJ improperly considered his obesity with respect to the listing. An ALJ must consider the effects of obesity in determining whether a claimant satisfies a listing. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00Q (2010). The Social Security Administration has interpreted this regulation only to require some consideration of the effects of obesity in the entire disability determination. Social Security Ruling, SSR 02-1p, 67 Fed. Reg. 57,859, 57,863 (Sept. 12, 2002) (obesity "may" be a factor in listing analysis). This court has ruled in harmony with that regulation by holding that an ALJ gives ample consideration to obesity by analyzing it in combination with other impairments. *See Shellhouse*, 395 F. Supp. 2d

at 1140 (N.D. Ala. 2005).  The ALJ found that claimant's obesity constituted a severe impairment, examined that impairment in light of the medical record and his other impairments, and mentioned it numerous times in the RFC determination. (R.17-20).  He, therefore, accorded due weight to the claimant's obesity under the Act's requirements.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the Commissioner's decision is supported by substantial evidence and is due to be AFFIRMED.  This court will enter a separate order consistent with this Memorandum Opinion.

DONE and ORDERED this 6th day of June, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE